United States District Court
Southern District of Texas
**ENTERED**
July 07, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **MUANG WIN MYINT,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:26-CV-02886** |
| | § | |
| **MARTIN FRINK, *et al.*,** | § | |
| | § | |
| **Respondents.** | § | |

**ORDER**

Before the Court is Petitioner Muang Win Myint's Petition for a Writ of Habeas Corpus Under 28 U.S.C. Under § 2241 (ECF No. 1) and Respondents' Updated Response to the Petition for Writ of Habeas Corpus and Renewed Motion for Summary Judgment (ECF No. 21). For the following reasons, the Court **GRANTS IN PART** the Petition for Habeas Corpus and **DENIES** Respondents' Motion for Summary Judgment.

## I. BACKGROUND

Petitioner Muang Min Wyint is a citizen of Myanmar who was born in a refugee camp in Thailand. *See* ECF No. 8 at 1, ECF No. 1 at 10. He entered the United States as a refugee in March of 2015. ECF No. 8 – Ex. 3 at 2. Petitioner filed a Form I-485, Application to Register Permanent Residence or Adjust Status in January of 2017. *Id.* A year later, he was convicted of aggravated assault against a public servant and sentenced to eight years' confinement. *Id.* Immigration and Customs Enforcement ("ICE") initiated removal proceedings against Petitioner following his conviction. *Id.* at 2-3. He was ordered removed to Myanmar, or alternatively to Thailand, in 2021. *Id.* at 3. Petitioner subsequently moved to reopen his case, and his motion was granted in 2023. *Id.*

After Petitioner finished serving his sentence in August of 2025, Petitioner was transferred to ICE custody. At a hearing before an Immigration Judge (IJ) on September 24, 2025, Petitioner "expressed a desire to be deported to Thailand, but did not want to be deported to Burma [Myanmar]." ECF No. 8 – Ex. 1. Petitioner received a Form I-589 (Application for Asylum and for Withholding of Removal) and was instructed to complete the form by October 8, 2025, if he wished to express a fear of removal to Myanmar. *Id.* Petitioner did not complete the form by the deadline, and the IJ issued a written order removing Petitioner to "Thailand and in the alternative to Burma" on October 15, 2025. *Id.* The removal order included a notation which read "Appeal Due: 11/14/2026" and did not contain any further detail concerning the process for filing an appeal. *See id.*

On May 27, 2026, this Court asked Respondents to file a supplemental advisory discussing whether Respondents complied with the notice requirements of 8 C.F.R. § 1240.13(d) during Petitioner's removal proceedings. Section 1240.13(d) requires that an individual subject to removal be "furnished with Form EOIR-26, Notice of Appeal, and advised of the provisions of § 1240.15." In lieu of filing a response, Respondents informed the Court that the Government had filed a motion to reopen Petitioner's immigration court proceedings to "ensure full compliance with 8 C.F.R. § 1240.13(d) on the record, and to reset the 30-day appeal period in Petitioner's case." ECF No. 18 at 1. The IJ granted the motion to reopen, and Petitioner was ordered removed at a hearing on June 15, 2026. *See* ECF No. 19; ECF No. 21 at 2. Petitioner reserved his right to appeal the removal order. *See id.*; ECF No. 21 – Ex. 3 at 4. He may do so by July 15, 2026. *Id.*

## II. ANALYSIS

Before the Government moved to reopen Petitioner's case, Respondents argued that Petitioner was subject to post-final-removal-order detention. *See* ECF No. 8 at 2. However, Petitioner is no longer subject to a final removal order, and Respondents now contend that Petitioner is held pursuant to 8 U.S.C. § 1226(c)(1)(B)–(C). These provisions establish mandatory detention during removal proceedings for, *inter alia*, noncitizens who are "convicted of a crime [involving moral turpitude] for which a sentence of one year or longer may be imposed" or who are convicted of an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(II)-(III). Under the Immigration and Nationality Act, aggravated felonies include "crime[s] of violence . . . for which the term of imprisonment [is] at least one year."[1] The Court does not possess the full record of Petitioner's state criminal proceedings, but it assumes for purposes of this analysis that Petitioner is properly held pursuant to 8 U.S.C. § 1226(c). The Court does not differentiate between the time Petitioner has spent in custody under § 1226(c) and the time Petitioner spent in post-removal detention due to an error on the part of the Government. Having considered Parties' briefing, the Court concludes that Petitioner's detention has become unconstitutionally prolonged and orders his immediate release from custody.

In *Salvador Rodriguez v. Frink*, this Court noted that "multiple Courts of Appeals have had the opportunity to consider the merits of constitutional challenges to § 1226(c)." 823 F.Supp.3d 678, 683 (S.D. Tex. Mar. 13, 2026) (citing *Black v. Decker*, 103 F.4th 133, 149 (2d Cir. 2024); *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020)). The Court "agree[d] with the First, Second, and Third Circuits

[1] Pursuant to 18 U.S.C. § 16, a crime of violence includes

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

that the Due Process Clause imposes a 'reasonableness' limitation on mandatory detention of 'criminal aliens' under § 1226(c)." *Id.* at 684. Adopting the Second Circuit's approach to assessing reasonableness, the Court now concludes that the "three-part balancing test" articulated by the Supreme Court in *Mathews v. Eldridge* applies to § 1226(c) detention. *See Black*, 103 F.4th at 147. The Court must therefore consider "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Black*, 103 F.4th at 151 (quoting *Mathews*, 424 U.S. at 335).

Beginning with the first and second *Mathews* factors, Petitioner here has a strong private interest in liberty from detention and no "'mechanism'" other than a habeas petition through which to challenge the length of his detention. *Id.* As of this writing, he has been in immigration custody for over ten months without any individualized determination that his continued detention is warranted because he is a flight risk or a danger to the community. "[T]he almost nonexistent procedural protections in place for section 1226(c) detainees markedly increase[s] the risk of an erroneous deprivation of [Petitioner's] private liberty interests." *Id.* at 152. "[A]most *any* additional procedural safeguards at some point in the detention would add value," *id.*, including a bond hearing at which the Government bears the burden of demonstrating the necessity of Petitioner's continued detention.

As to the third *Mathews* factor, the Government doubtless has important interests in "(1) ensuring the noncitizen's appearance at proceedings, and (2) protecting the community from noncitizens who have been involved in [certain] crimes." *Id.* at 153. However, "the balance of

interests shifts as the noncitizen's detention is prolonged without any particularized assessment of need." *Id.* Moreover, the Government could adequately address its concerns while affording Petitioner the opportunity for a meaningful hearing. Because each of the *Mathews* factors weighs in favor of Petitioner, the Court finds that Petitioner's ongoing detention violates his due process rights.

## III. REMEDY

"[I]n habeas cases where the Court finds an ongoing detention unlawful, 'the typical remedy for such detention is, of course, release.'" *Guevara Carabantes v. Bondi, et al.*, No. 1:26-CV-446-RP, 2026 WL 689995, at *5 (W.D. Tex. Mar. 5, 2026) (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)).

Where a noncitizen seeks habeas relief from civil immigration detention, courts in the Fifth Circuit and elsewhere have determined that immediate release is appropriate. *See, e.g., Cruz-Reyes v. Bondi*, No. 5:26-CV-60, 2026 WL 332315, at *6 (S.D. Tex. Feb. 3, 2026) (requiring immediate release where "Petitioner ha[d] demonstrated a profound liberty interest in his freedom from civil detention and a concrete, ongoing deprivation of that liberty without any process provided by Respondents to justify his detention"); *Perdomo-Casana v. Lyons*, No. 1:26-CV-345-RP, 2026 WL 607267, at *6 (W.D. Tex. Mar. 4, 2026) (collecting cases). Petitioner has been deprived of his liberty for over ten months, and the Court concludes that immediate release from custody is required. If Respondents wish to re-detain Petitioner, they may do so after notice to Petitioner and a hearing at which the Government bears the burden to prove by clear and convincing evidence that Petitioner presents a flight risk or a danger to the community.

The Court therefore **ORDERS** as follows.

1. Respondents are **ORDERED** to release Petitioner from custody within 48 hours.
2. Respondents must release Petitioner in a public place within the Southern District of Texas and must notify a family member or acquaintance chosen by Petitioner of the time and place of his release **no less than three hours** prior to his release from custody.
3. Respondents must return all personal property to Petitioner upon release, including all identity documents such as a social security card, Employment Authorization Document, driver's license, and/or passport.
4. If Respondents seek to re-detain Petitioner during the pendency of his removal proceedings, they must provide notice to Petitioner and a pre-detention hearing before an IJ at which the government demonstrates, by clear and convincing evidence, that he is a flight risk or a danger to the community. Nothing in this Order prevents Respondents from re-detaining Petitioner consistent with this requirement.

The Court further **ORDERS** that Respondents file an advisory with the Court **on or before July 10, 2026**, informing the Court of the status of Petitioner's release and Respondents' compliance with the notification and return of personal property requirements outlined above.

**IT IS SO ORDERED.**

Signed at Houston, Texas on July 7th, 2026.

Keith P. Ellison
United States District Judge